We move to the fifth case this afternoon, U.S. v. Schmidt. Mr. Henderson, may it again please the Court. I'm Peter Henderson on behalf of Erik Schmidt. I guess I wanted to start this argument with what this case is not about, because especially in the last week we've become aware of what has become a pattern of grotesque violence against a Jewish community in Pittsburgh, an African-American church community. We had a rally in Charlottesville where somebody engaged in violence and killed somebody with his car. That's not what this case is about. The First Amendment does not protect that activity. The First Amendment does not prohibit the government from introducing statements of bias, of racist views, of anti-Semite views, to establish that those people should be punished for their crimes. You know, given the nature of Schmidt's offense, do you think the District Court could have permissibly said anything about his white supremacist beliefs without running afoul of the First Amendment? What's your view on that? I think the Court certainly could have acknowledged those views. I think what the District Court impermissibly did in this case was it explicitly tied a punishment to those views. And it kept recognizing, look, I know I'm not supposed to punish people for ideas, but I can't get over this idea that these ideas are violent or these ideas are dangerous. And so I think at our appendix on page 15, I think what really clinches it and puts it over the line is the District Court says, these aren't the words of a youthful offender. These are the words of someone who, at this point in his life, ought to know better, and they represent a threat. And if he holds those ideas, and as I said, ideas matter. People do things based on their ideas, and if these are his ideas, he is a very dangerous person. Well, given Schmitt's extensive criminal history and propensity for violence, you know, expressing his hatred for minorities itself demonstrates a characteristic that warrants consideration at sentencing, doesn't it? No, I don't think so. I think you can consider it. I think you can consider it in determining who this defendant is. Every defendant who is sentenced is an individual who should be judged on the accomplishments he's made and the flaws that he has. I think the Court can consider that. But to impose an additional punishment based on a view that these ideas are dangerous, that runs afoul of the First Amendment because it's a fundamental First Amendment principle. The government should not punish people based on ideas, regardless of how dangerous the government thinks those ideas may be. But the sentence was still below the advisory guidelines. You know, he could easily face a longer sentence on remand. Even absent any mention of the views. I mean, is he willing to take that risk? Yes, he is, because he negotiated with the United States that the United States felt it was appropriate to recommend a sentence of no longer than 36 months of imprisonment. The United States' recommendation carries a lot of weight. He certainly made a recommendation for probation, given the facts of this case. I don't practice in that district court. It may be that a sentence of probation was possible in some other districts that maybe were going by the guidelines. But he's certainly aware of that risk. We're aware that we're asking the Court to remand us for a resentencing where all of those factors will be in play. Well, the guidelines were 51 to 63 months, are they not? Correct. And so at 48 months, that's the sentence he received, correct? That's the sentence he received. That's pretty close to the bottom of the range. Well, that's right, but the parties in looking at the case agreed that a sentence of no more than 36 months was appropriate. But even so, at the bottom, typically we look where the range is, and if it's near the bottom, this is. That's right, and we're not challenging the substantive reasonableness of the sentence. But it's clear that there's a reason the district court went above the government, the defendant, the probation officer's recommendation, and that's because it just couldn't get over this belief that these ideas are dangerous. Well, that's contrary to what he said, the district judge, I mean. Well, the district judge, as I just said, right, he said, so I'm sentencing him for an offense, not for his ideas, but it seems to me I appropriately can consider those. Right after he says, look, I just can't dismiss these ideas. He ought to know better. These ideas represent a threat. If he holds these ideas, he is dangerous, and that's just contrary to what the First Amendment protects. What the Supreme Court said in a sentencing context, you know, in the Dawson case, the defendant was on trial and was at the sentencing phase of a capital sentencing phase, and so you'd certainly think dangerousness would be an appropriate inquiry for the jury to consider. Is this person going to be dangerous to others, whether in prison or not? And the Supreme Court said, no, you cannot take into account abstract beliefs by a sentencing judge. Even if you link it to one of the enumerated factors, these abstract beliefs are protected. Do you think that Schmidt's willingness to express his views to the probation officer with his, you know, lawyer pleading with him not to, is itself indicative of dangerousness? I mean, I guess that's my question. I don't think it is. Again, as I said earlier, I think that the district court can consider everything that happened in this interview. I think it can take that into consideration of who is this person in front of me, how does he behave, does he, you know, respect authority, that type of thing. But the basis for the district court sentence was not, you know, what have you, it was these ideas are dangerous that you expressed. And it's very clear the Supreme Court said in the Mitchell case, an abstract belief, however obnoxious to most people, may not be taken into consideration by a sentencing judge. So we would ask the court to reverse the sentence on those procedural grounds and remand for resentencing. Thank you, Mr. Mitchell. Good afternoon, Your Honors. May it please the court, my name is Benjamin Tableson, and I represent the United States. Eric Schmidt is a violent felon, and the district court made a factual finding that his criminal history and his statements indicate that he is dangerous to the public. The court explained it was not sentencing Mr. Schmidt based on his views in the abstract. Instead, he was sentencing Schmidt for Mr. Schmidt's offense, while also considering Schmidt's white supremacist, pro-Nazi views, because, simply put, the court had to do so to evaluate his dangerousness. What information in the record supports your contention that Schmidt is a pro-Nazi white supremacist? Has he ever said anything about not that he wants to go back and live in Germany? Well, Your Honor, Mr. Schmidt has a swastika tattooed on his back. He has painted himself as a Nazi. He has Wyatt Adolf tattooed on his neck. And in the context of describing his hatred for racial minorities and for the United States for granting civil rights to racial minorities, that is when he described with some pride his Nazi ancestral heritage. So I don't think it was clear error for the judge to find that Mr. Schmidt's views were dangerous. And as this court said in Compadia, nothing in the Constitution prevents a sentencing court from factoring a defendant's statements into sentencing when those statements are relevant to, one, the crime, or, second, relevant to legitimate sentencing considerations. Dangerousness is one such consideration. And it is particularly relevant in the felon in possession context. The whole point of that statute is that Congress forbid a class of people that Congress determined to be dangerous from possessing firearms. So at sentencing, a core inquiry in these cases is how dangerous is this felon? It is unsurprising, then, that this court has repeatedly affirmed sentences based on a lower court's determination that a defendant's views make him dangerous and more likely to reoffend. The terms and conditions of supervised release are very much part of a sentence. And in the United States v. Showalter, for example, which was not a hate crime case. It was a case in which a man was convicted of possessing an unregistered firearm. It was a firearm case. He was sentenced based on his views. And his First Amendment rights of speech and association were abridged based on his dangerousness. What were the prior offenses of the defendant? In Showalter? Or in this case? In this case. Oh, in this case, the defendant had 17 prior convictions over 15 years. They included several felonies. And they included violence such as beating and strangling his minor girlfriend, threatening the lives of his family, and threatening to kill a man he believed was in contact with his girlfriend. And the court below said, I'm not putting too much weight on your views. The court was plainly more interested in his criminal history. But the court said, in the context of your criminal history, your statements and the fact that you were in possession of a gun and have no respect for the rule of law make you, in the district court's view, very dangerous. And so the court, nonetheless, selected a below guidelines sentence here but did select a sentence higher than the government recommendation, a recommendation, I will note, that it was made pursuant to a plea agreement and so before the PSR was prepared and so before either the government or obviously the sentencing judge had complete information about the criminal history in views of this defendant. I'll note that Dawson does not control here. This court distinguished Dawson in Compadia, explaining that a very narrow stipulation in that case, and Dawson was held not to be relevant to the jury's determination of whether that sentence should be imposed. Here we have the difference. When you talk about Dawson, are you suggesting that a different standard applies when it is a sentencing judge as opposed to a jury considering the information? I think we don't need to go there to distinguish Dawson. We can just say here we know the judge believed this to be relevant and have his stated basis for the relevance of Mr. Schmidt's views. The fact that a jury was a black box in Dawson, I believe, was relevant. It is also true that in Dawson, part of the disagreement between the majority and the dissent in that case was over essentially the sophistication of the jury, how aware of the context for the Aryan Brotherhood the jury would have been. Here, plainly, we have a judge who is every bit as sophisticated as is necessary to evaluate Mr. Schmidt's statements. I'll also note that future dangerousness was not an issue in Dawson because it was a capital sentencing case. He was not going to be released and pose a danger to the public, which is quite different from here. The district court made factual findings, set out the governing law, navigated that law, and imposed the below guideline sentence. If Your Honors have no further questions, we ask that the sentence be affirmed. Thank you, counsel. Thank you. Mr. Anderson? I'd like to pick up where my friend left off. Capital sentencings certainly are about dangerousness. It's a decision about whether this person poses a risk of danger to other inmates for the rest of his life or whether we need to take such drastic measures as to execute him for his crime. So dangerousness is certainly on the table at capital sentencings. The main dispute really here is about whether these abstract beliefs about racist views have any relevance to a sentence based on a conviction for possessing a gun in the northern Wisconsin woods in a tent. Mr. Schmidt has no prior convictions for hate crimes or crimes relating to bias, those sorts of motivated crimes, and I think the court can start and stop with how the Supreme Court summed it up in Mitchell. Abstract beliefs, however obnoxious, may not be taken into consideration by a sentencing judge. The judge here took those beliefs into consideration to increase the penalty, and so unlike Kapadia, for example, Kapadia was a hate crime. That's why Dawson didn't apply. It clearly was relevant that a person with an anti-Semitic bias... But this defendant did have physically violent offenses previously. Right, but they weren't motivated by any sort of hate or racial motive or anything like that. They were violent. He can be sentenced for his criminal past. We have no dispute about that. But whether he should... But, you know, you have the judge saying, you know, saying... Basically, the judge is trying to say, I'm not going to sentence him for that. I am sentencing him because he is very, very violent. But I can't not consider the rest of him, the whole of him. Don't you think? I think that the district judge made a very good attempt to try to sort those things out. And during the sentencing hearing, you see him struggle with, I know I can't sentence based on these ideas. But at the end of the sentencing hearing, his comments indicate that, in fact, he is specifically incorporating these ideas into a sentencing decision to impose a sentence higher than that recommended by any of the parties. So for that reason, we feel that he did violate the First Amendment rule against punishing ideas, and we'd ask for new sentencing. Thanks. Thank you. Thank you, counsel. Thanks to both counsel, and the case will be taken under advisement.